```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Michael Heilbron,

                        Appellant,                         MEMORANDUM & ORDER
                                                           23-CV-07443 (DG)
        -against-

Benjamin Plaza, Jr.,

                        Appellee.
----------------------------------------------------------------X
```
DIANE GUJARATI, United States District Judge:

Appellant Michael Heilbron appeals from the September 28, 2023 Order and Judgment After Trial (the "September 28, 2023 Order and Judgment") of the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), which found that Appellant acted willfully when he injured Appellee Benjamin Plaza, Jr. on June 28, 2008; found that Appellant acted maliciously when he injured Appellee on June 28, 2008; ordered and adjudged that judgment is entered in favor of Appellee and against Appellant on Appellee's nondischargeability claim under Bankruptcy Code Section 523(a)(6); and ordered and adjudged that the Default Judgment entered in the Supreme Court of the State of New York, County of Queens is nondischargeable pursuant to Bankruptcy Code Section 523(a)(6). *See* Notice of Appeal, ECF No. 1; Bankruptcy Record ("R.") 827-30, ECF No. 2.[1]

For the reasons set forth below, the September 28, 2023 Order and Judgment is AFFIRMED.

---

[1] Familiarity with the procedural history and background of this case – including with the Bankruptcy Court proceedings, state court actions, and prior District Court decision discussed below – is assumed herein.

## BACKGROUND

I.    **Queens Criminal Court Action – Guilty Plea and Sentence**

A criminal complaint dated July 1, 2008, filed in the Criminal Court of the City of New York, County of Queens (the "Queens Criminal Court"), charged that on or about June 29, 2008, Appellant committed the offenses of Assault in the Second Degree, in violation of N.Y. Penal Law § 120.05(1); Assault in the Second Degree, in violation of N.Y. Penal Law § 120.05(2); Assault in the Third Degree, in violation of N.Y. Penal Law § 120.00(1); and Harassment in the Second Degree, in violation of N.Y. Penal Law § 240.26(1).  *See* R. 124-25.[2]  In the criminal complaint, Deponent Detective Victor Herrera states, *inter alia*, that "he is informed by the complainant Benjamin Plaza" that on or about June 29, 2008 between 10:30 p.m. and 10:40 p.m., "at the NE intersection of 78 Street and 21 Avenue, County of Queens, State of New York," "an unapprehended other struck the Complainant in the side of his head with an unknown hard object causing the Complainant to fall forward and the Defendant, Michael Heilbron, proceeded to punch the Complainant in his chin causing his jaw to break into two pieces and his tooth to break and a laceration to the Complainant's right ear as well as substantial pain."  *See* R. 124.

On February 5, 2009, Appellant pled guilty before the Honorable Dorothy Chin Brandt of the Queens Criminal Court to "assault in the third degree, a violation of 120.00 of the penal law." *See* R. 126-27.  At the proceeding on February 5, 2009, Appellant confirmed that "[o]n or about 2/29[3] of last year, about 10:30 in the evening at 78th Street and 21st Avenue in Queens,

---

[2]   The Court refers herein to the action in the Queens Criminal Court as the "Queens Criminal Court Action."

[3]   The reference to "2/29" appears to be a transcription error.  There does not appear to be any dispute that the subject incident took place in *June* 2008.  (Although the record reflects – in different places – an incident date of June 28, 2008 and an incident date of June 29, 2008, the difference is not material to the Court's decision herein.)

2

[Appellant] knowingly assaulted another person and caused injury to that person." *See* R. 127. Sentence was then imposed as follows:

> The sentence is a conditional discharge, you have to stay out of trouble for one year, take the 12 week anger management program, and perform five days community service. You have to pay $200.00 in court fees, $50 in DNA fees, total of $250.00. And, you must obey an order of protection.

*See* R. 127-28; *see also* R. 129 (Certificate of Disposition).

**II.    Queens Supreme Court Action – Default Judgment**

By Summons and Verified Complaint dated March 26, 2009, Appellee commenced an action against Appellant in the Supreme Court of the State of New York, County of Queens (the "Queens Supreme Court"), asserting a cause of action for assault and a cause of action for battery (the "Queens Supreme Court Action"). *See* R. 228-36. By Order dated August 31, 2009, the Queens Supreme Court granted Appellee's motion for default judgment and directed that an inquest and trial on damages be held on November 4, 2009. *See* R. 237. On November 4, 2009, the Queens Supreme Court awarded Appellee $75,000 for past pain and suffering, $50,000 for future pain and suffering, and $200 for medical expenses, for a total award of $125,200, plus interest from August 31, 2009. *See* R. 243. Judgment was entered on November 18, 2009 (the "Default Judgment"). *See* Default Judgment, *Plaza v. Heilbron*, No. 18-01055 (Bankr. E.D.N.Y.), ECF No. 1-4; *see also* R. 291.

By Order to Show Cause together with supporting documents dated August 29, 2016, Appellant sought an order granting certain relief, including "[a] stay in the execution of judgment;" "[v]acating the default judgment against [Appellant] pursuant to CPLR § 5015(a);" and "[a] mandatory injunction pursuant to CPLR § 6301, compelling [Appellee] to cease garnishing [Appellant's] current wages." *See* R. 245-46, 249. By Order dated December 5, 2016 and filed January 4, 2017, the Queens Supreme Court, *inter alia*, denied Appellant's request to

3

vacate the Default Judgment, noting that "[t]he affidavit of the defendant Michael Heilbron sworn to on August 29, 2016 does not set forth a reasonable excuse for his default in appearing nor a meritorious defense to the action." *See* R. 298.

### III. 2018-2020 Bankruptcy Court Proceedings

#### A. Bankruptcy Petition

On April 30, 2018, Appellant filed a voluntary petition under Chapter 7 of the Bankruptcy Code. *See* Voluntary Petition, *In re Heilbron*, No. 18-42486 (Bankr. E.D.N.Y.), ECF No. 1. On August 8, 2018, the Bankruptcy Court ordered a discharge under 11 U.S.C. § 727. *See* Order of Discharge, *In re Heilbron*, No. 18-42486 (Bankr. E.D.N.Y.), ECF No. 15.

#### B. Adversary Proceeding

On May 7, 2018, Appellee commenced an adversary proceeding against Appellant in connection with the Default Judgment, requesting that the Bankruptcy Court enter an order denying Appellant's discharge pursuant to 11 U.S.C. § 523(a)(6) ("Section 523(a)(6)"). *See* Complaint, *Plaza v. Heilbron*, No. 18-01055 (Bankr. E.D.N.Y.), ECF No. 1. On December 20, 2018, Appellee filed a motion for summary judgment. *See* R. 116. In support of his motion, Appellee argued, *inter alia*, that Appellee's claim was nondischargeable under Section 523(a)(6) and that Appellant was collaterally estopped from discharging his debt to Appellee due to Appellant's guilty plea under N.Y. Penal Law § 120.00, the Default Judgment, and the Queens Supreme Court's determination with respect to Appellant's motion to vacate the Default Judgment. *See generally* Memorandum of Law, *Plaza v. Heilbron*, No. 18-01055 (Bankr. E.D.N.Y.), ECF No. 14-1. Appellant opposed the motion for summary judgment. *See* R. 4-57.

On January 15, 2020, the Bankruptcy Court issued a Memorandum Decision (the "January 15, 2020 Decision") and an Order and Judgment (the "January 15, 2020 Order and

Judgment"). *See* R. 58-109. The Bankruptcy Court granted Appellee's motion for summary judgment, concluding that Appellee had "met his burden to show that [Appellant] [was] collaterally estopped from contesting each of the elements of [Appellee's Section 523(a)(6)] claim;" that accordingly, "there [was] no genuine dispute as to a material fact with respect to those elements;" and that Appellant had "not met his burden to show that he did not have a full and fair opportunity to contest these matters in the Queens Criminal Court Action and the Queens Supreme Court Action." *See* R. 107; *see also* R. 108-09.

### IV.    Prior Appeal and Remand

By Notice of Appeal dated January 26, 2020, Appellant appealed the January 15, 2020 Order and Judgment and the January 15, 2020 Decision. *See* Notice of Appeal, *Heilbron v. Plaza*, No. 20-CV-00312 (E.D.N.Y.), ECF No. 1.

On appeal, as set forth in a Memorandum & Order dated March 19, 2021 (the "March 19, 2021 Order"), United States District Judge Carol Bagley Amon of the United States District Court for the Eastern District of New York, *inter alia*, (1) concluded that Appellee had failed to meet his burden of showing that the issue of "willfulness" was necessarily decided in the Queens Criminal Court Action, noting that "the record [did] not clearly establish that [Appellant] was convicted of committing an intentional rather than a reckless assault;" (2) concluded that Appellant was not collaterally estopped from contesting maliciousness by his criminal conviction, noting that "the Bankruptcy Court's finding of maliciousness was inextricably linked to its finding that [Appellant] pleaded guilty to an intentional assault;" and (3) vacated the Bankruptcy Court's decision and remanded the case to the Bankruptcy Court for further proceedings consistent with the March 19, 2021 Order – *i.e.*, for a trial on the issues of willfulness and maliciousness. *See Heilbron v. Plaza*, No. 20-CV-00312, 2021 WL 1062034, at

5

*5-6 (E.D.N.Y. Mar. 19, 2021).[4]

## V.      Bankruptcy Court Trial

On remand, the Bankruptcy Court held a trial on the issues as to which Judge Amon had remanded the case – willfulness and maliciousness.  *See* R. 576-784; *see also* R. 789 (Bankruptcy Court stating that trial was held on "the twin issues of whether [Appellant] had acted willfully and whether he had acted maliciously").  At the trial, which took place on February 23 and 24, 2023, Appellee and Appellant each testified, and several exhibits were received into evidence, including documents from the Queens Criminal Court Action and the Queens Supreme Court Action.  *See* R. 576-784; *see also* R. 801-12.

### A.      Testimony of Appellee

Appellee testified, *inter alia*, that on June 28, 2008 at around 10:30 p.m., as he was walking down the block from his house and towards his car, he saw Appellant and another individual whom he had never met coming in his direction.  *See* R. 587-88.[5]  Appellee further testified:

> And that's when Mr. Heilbron approached me, [a]sked me about what's going on with Melissa, and I said, I don't know what you're talking about.  The second individual lacerated my right ear which caused me to grab it.  Obviously, I was forced to crutch down, and at that point, that's where I was intentionally attacked and my jaw was broken at that point immediately, and I had to grab it, because blood was coming out profusively [sic] and everything was happening so fast.

*See* R. 588; *see also* R. 591-92 (Appellee testifying that Appellant struck the right side of

---

[4]  Judge Amon noted that Appellant did "not appear to dispute . . . that the conviction conclusively establishes the injury element of [Appellee's] nondischargeability claim."  *See Heilbron*, 2021 WL 1062034, at *3 n.2.

[5]  Appellee testified that he knew Appellant before the incident through mutual friends.  *See* R. 631.

6

Appellee's face with Appellant's fist), 638 (Appellee specifying that Appellant hit Appellee with Appellant's *left* hand).[6] Appellee testified that he did not see if Appellant was aiming at Appellee's jaw, because at that point Appellee "was already crutching." *See* R. 592.[7]

### B. Testimony of Appellant

Appellant testified that he found out that Appellee was talking to Appellant's girlfriend, Melissa, on social media, that he was "upset," and that he "confronted" Appellee on the phone. *See* R. 723-24. Appellant testified: "I said to him we need to talk, where are you? He told me, I'm home, and I said, I'm going to be outside. And then I went to go meet him." *See* R. 724; *see also* R. 725 (Appellant testifying that Appellee agreed to meet Appellant outside). Appellant testified that his friend Holger Adrian Carrera drove him to Appellee's house, and that Mr. Carrera stayed in the car "until he witnessed what had happened." *See* R. 726-27. Appellant further testified:

> When I got there, Benjamin was outside. I got out the car. We started talking about it. He denied it. And I said, I have proof, how can you do this to me? I was upset because at the time I remember very clear that he had broken up with his girlfriend at the time, and he started hanging out with me and Melissa's friends, which is the photos that are evidence.
>
> And I said to him, what was happening? He started saying, oh, that's BS, and I remember I showed him the information on the phone I had at the time, and then we started like swearing at each other.
>
> He at the time was bigger than me physically. So, I didn't go out and like beat him up as he was trying to make it look like. We grabbed each other, Judge, and we started like kind of just yelling at each other.
>
> I don't remember punching him. I had no intentions to beat him up or punch him.

---

[6] Appellee testified that he and Melissa had attended the same high school and "became mutual friends through . . . school." *See* R. 590.

[7] The references to "crutch" and "crutching" appear to be mistranscriptions of "crouch" and "crouching," respectively, *see* R. 803; Appellee Br. at 4 n.7, which mistranscriptions are not material to the Court's decision herein.

> I was shorter than him. I'm still shorter than him. So, none of that happened the way he described it yesterday.
>
> I might have hit him. I'm right handed. So, we kind of pulled each other off. That's when my friend Adrian came out, like, hey, what's going on?
>
> I remember also very clear that there was a lady that said, hey, what's going on, I'm going to call the cops, and that was the end of it. He was not bleeding. He was not hurt. I got in the car and left. When I heard they were going to call the cops, I said, forget about it, and he said, whatever, FU, and he left. I left. He walked right inside. There was no blood. There was no injuries. So, I left. . . .

*See* R. 727-28; *see also* R. 731-32 (Appellant testifying that Appellee "was not bleeding," "was not in pain," and his jaw "was not broken").

Appellant acknowledged that he had previously stated that he "might have punched" Appellee, and Appellant testified that he did not "remember hitting [Appellee] right on the jaw as [Appellee] described it" at trial, that he and Appellee "were grabbing each other," and that Appellee "also defended himself" and "tried to get [Appellant] off." *See* R. 730. Appellant further testified that he remembered signing an affidavit stating, *inter alia*:

> [Appellee] became very rude and loud, and then we got into an altercation. I do not recall if he grabbed me first or I grabbed him first. I remember I fell on top of a car. I do not recall hitting him. We may both have been throwing punches or he may just have hurt himself another way.

*See* R. 733. In addition, Appellant testified: "I think I hit him. He hit me as well. He defended himself, so we both hit each other. . . . I might of hit him first, yes." *See* R. 743-44.

Appellant testified that the following statement, from the affidavit, was accurate: "I do not recall ever hitting [Appellee] in the jaw or anywhere else. It certainly was not my intention to break his jaw. If I did, it was a spontaneous reaction while we were both wrestling." *See* R. 743. Appellant testified that when he went to talk to Appellee, it was "[a]bsolutely not" his intention to hit Appellee. *See* R. 744. And, when asked "[W]hen you both grabbed each other, was it your intention to hit him?" Appellant replied "No." *See* R. 744.

8

Notably, in response to the following questions on cross-examination, Appellant gave the following answers:

> Q. Now, if you threw a punch, you were trying to hurt Mr. Plaza with that punch, correct?
>
> . . .
>
> A. . . . So, the answer is no.
>
> . . .
>
> Q. Well, you knew that night, whether you punched him or not, that if you punched somebody in their jaw it's substantially likely you're going to break their jaw, correct, you would agree with that?
>
> A. If you -- yeah, if you punch someone in the jaw, yes.
>
> Q. And whether you did it or not, on that night of the incident, you knew it was wrong to punch somebody in the jaw?
>
> A. Of course, that's why I didn't do it because I knew that it was wrong.
>
> Q. Yes or no, on that night, whether you did it or not, you knew it was illegal to punch somebody in the jaw?
>
> A. Yeah, I knew that, yes.
>
> Q. And you agree that, whether Mr. Plaza was trying to steal your girlfriend or not, you had no right to punch him that night, correct, you would agree with that?
>
> A. Of course, yes.
>
> Q. And you would agree that even best friends who are in pictures together every day, they can have a disagreement and get into a physical fight and cause the other one injury and intend to cause the other one injury, you would agree with that, correct?
>
> A. I can agree, yes.

See R. 740-42.[8]

---

[8] Appellant also testified that he did not allege to the judge in the Queens Criminal Court Action that he acted in self-defense but that he "brought up the case with [his] lawyer at that

9

## VI. Bankruptcy Court Memorandum Decision After Trial & Order and Judgment After Trial

On September 28, 2023, the Bankruptcy Court issued a Memorandum Decision After Trial (the "September 28, 2023 Decision"). *See* R. 787-826. In the September 28, 2023 Decision, the Bankruptcy Court set forth that it found that Appellee had established that Appellant acted "willfully and maliciously" as required under Section 523(a)(6) and therefore "the Section 523(a)(6) exception to discharge applies to the [Default Judgment], and the resulting debt is excluded from the scope of [Appellant's] Chapter 7 bankruptcy discharge." *See* R. 825-26.[9]

With respect to the issue of willfulness, the Bankruptcy Court set forth that Appellee was required to establish by a preponderance of the evidence that Appellant acted willfully; that in order to find that Appellant acted willfully, the Bankruptcy Court "must find that [Appellant] acted in a manner that resulted in 'a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury;'" and that Appellee "can demonstrate that intentional injury if he shows that [Appellant] acted intending to inflict it, or if he 'knew that the injury was substantially certain to result.'" *See* R. 818-19 (first quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); then quoting *In re Margulies*, 517 B.R. 441, 453 (S.D.N.Y. 2014)). The Bankruptcy Court determined that "the record supports the conclusion that *initially*, [Appellant] had an intent to confront [Appellee], but not to injure him." *See* R. 820 (emphasis added). However, the

---

time." *See* R. 649.

[9] The Bankruptcy Court noted that Appellant did not appeal, and the Bankruptcy Court did not reconsider, the injury element of Appellee's nondischargeability claim, which the Bankruptcy Court determined in Appellee's favor in the January 15, 2020 Decision. *See* R. 818 (citing *Heilbron*, 2021 WL 1062034, at *3 n.2).

10

Bankruptcy Court noted, *inter alia*, that "intent requires only an instant to form," *see* R. 820; that Appellant stated in his Answer that "his and [Appellant's] 'mutual conduct was reckless and substantially certain to cause injury to each other,'" *see* R. 821 (quoting Answer ¶ 5, *Plaza v. Heilbron*, No. 18-01055 (Bankr. E.D.N.Y.), ECF No. 3); and that Appellant had on cross-examination agreed that "if you punched somebody in their jaw it's substantially likely you're going to break their jaw," *see* R. 821 (quoting R. 741).  The Bankruptcy Court found that Appellant "knew to a substantial degree of certainty that if he punched [Appellee] in the jaw, an injury to [Appellee's] jaw was substantially certain to result" and found that Appellant acted willfully "when he did just that."  *See* R. 822.[10]  The Bankruptcy Court found and concluded that Appellee had met his burden to show that Appellant acted willfully.  *See* R. 822.

      With respect to the issue of maliciousness, the Bankruptcy Court set forth that Appellee was required to prove by a preponderance of the evidence that Appellant's actions were "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will," *see* R. 822 (quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)); that Appellant "testified that, at the time of the incident, he knew that punching another person in the jaw was illegal and wrong" and agreed that "whether Mr. Plaza was trying to steal his girlfriend or not, he had no right to punch him that night," *see* R. 824 (alterations accepted) (quoting R. 741); that even when the conduct at issue is "malicious," a finding of nondischargeability under Section 523(a)(6) requires that the conduct also be "without just cause or excuse," *see* R. 824 (quoting *In re Greene*, 397 B.R. 688, 693 (Bankr. S.D.N.Y. 2008)); and that although one example of a "just cause or excuse" that has been recognized by courts in the appropriate

---

[10] The Bankruptcy Court appears to have mistakenly referred to Appellee rather than Appellant in stating that it "finds that *Mr. Plaza* acted willfully" when he punched Appellee in the jaw, *see* R. 822 (emphasis added).

circumstances is self-defense, "here, [Appellant's] testimony is not consistent with a self-defense claim," *see* R. 824-25.  The Bankruptcy Court found and concluded that Appellee had met his burden to show that Appellant acted maliciously.  *See* R. 825.

By Order and Judgment After Trial dated September 28, 2023, the Bankruptcy Court ordered and adjudged "that judgment is entered in favor of [Appellee] and against [Appellant] on [Appellee's] nondischargeability claim under Bankruptcy Code Section 523(a)(6)" and ordered and adjudged "that the [Default Judgment] is nondischargeable pursuant to Bankruptcy Code Section 523(a)(6)."  *See* R. 830.

## VII.   The Instant Appeal

On October 4, 2023, Appellant, then proceeding *pro se*, filed a Notice of Appeal.  *See* ECF No. 1.  By letter motion dated December 18, 2023, Appellee moved to dismiss the appeal because Appellant had not served and filed his brief or sought an extension of time.  *See* ECF No. 3.  On January 5, 2024, counsel for Appellant filed a Notice of Appearance, *see* ECF No. 6, and by letter dated January 5, 2024, Appellant, *inter alia*, requested an extension of time to file a brief, *see generally* ECF No. 7; *see also* ECF No. 5.  By letter dated January 11, 2024, Appellee stated that he did not oppose the request for an extension.  *See* ECF No. 11.[11]  By Order dated January 12, 2024, the Court granted Appellant's request for an extension and set a briefing schedule.  *See* January 12, 2024 Order.  On March 12, 2024, Appellant filed his brief.  *See* Opening Brief for Appellant ("Appellant Br."), ECF No. 14.  On April 11, 2024, Appellee filed his brief.  *See* Brief for Appellee ("Appellee Br."), ECF No. 16.  On April 25, 2024, Appellant filed his reply ("Reply").  *See* ECF No. 17.

---

[11] The motion to dismiss is deemed withdrawn.

12

**STANDARD OF REVIEW**

Under 28 U.S.C. § 158, district courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. *See* 28 U.S.C. § 158(a)(1). A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Lorick*, 634 B.R. 220, 223 (E.D.N.Y. 2021) (quoting *In re Bernard L. Madoff Inv. Sec., LLC*, 605 B.R. 570, 581 (S.D.N.Y. 2019), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 830 F. App'x 669 (2d Cir. 2020)). "In general, a district court reviews a Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*." *Heilbron*, 2021 WL 1062034, at *2 (citing *In re Bayshore Wire Products Corp.*, 209 F.3d 100, 103 (2d Cir. 2000)). "When mixed questions of law and fact are raised on appeal, they are presumptively subject to de novo review." *In re Portaluppi*, No. 13-CV-00421, 2014 WL 2559403, at *2 (D. Conn. June 6, 2014), *aff'd*, 609 F. App'x 30 (2d Cir. 2015).

**DISCUSSION**

In the "Statement of the Issue" section of Appellant's brief, Appellant identifies three issues: (1) whether the Bankruptcy Court erred in ruling that the Default Judgment is a nondischargeable debt under Section 523(a)(6) because Appellant acted "willfully" and "maliciously;" (2) whether the Bankruptcy Court "erred in making this determination where there was insufficient evidence presented at trial and on the record that [Appellant] had, in fact, acted willfully and maliciously and the Bankruptcy Court's finding was not supported by the record;" and (3) whether the Bankruptcy Court "erred in using an incorrect standard in determining the 'foreseeability of injury' from the action of [Appellant's] punch, rather than following the legislative history for Section 523(a)(6) and controlling precedent of the U.S. Supreme Court, which ruled on the statute, and which explicitly required that it is the injury,

13

rather than . . . the action, that needs to be intentional and malicious." *See* Appellant Br. at 2.

For the reasons set forth below, the Court determines that the Bankruptcy Court properly concluded that pursuant to Section 523(a)(6), the Default Judgment is a nondischargeable debt. Accordingly, the September 28, 2023 Order and Judgment must be affirmed.

**I.    Applicable Law**

Section 523(a)(6) provides that a discharge under Section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of Title 11 does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." *See* 11 U.S.C. § 523(a)(6). "This exception to discharge requires a plaintiff to prove three elements: (1) debtor acted willfully, (2) debtor acted maliciously, and (3) debtor's willful and malicious actions caused injury to the plaintiff or the plaintiff's property." *In re Margulies*, 721 F. App'x 98, 101 (2d Cir. 2018) (quotation omitted); *see also Heilbron*, 2021 WL 1062034, at *2. "A plaintiff in a nondischargeability action must prove each of these elements by a preponderance of the evidence." *Heilbron*, 2021 WL 1062034, at *2 (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)); *see also Ball*, 451 F.3d at 69.

"As used in § 523(a)(6), 'the term willful means deliberate or intentional.'" *Heilbron*, 2021 WL 1062034, at *2 (alteration accepted) (ellipsis omitted) (quoting *In re Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996)). Further, as used in Section 523(a)(6), "the word 'willful' indicates 'a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury.'" *See Ball*, 451 F.3d at 69 (quoting *Geiger*, 523 U.S. at 61); *see also In re Snyder*, 939 F.3d 92, 105 (2d Cir. 2019). "Debts 'arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6).'" *Heilbron*, 2021 WL 1062034, at *2 (quoting *Geiger*, 523 U.S. at 64). "Courts within the Second Circuit have found that if a debtor believes that an injury

14

is substantially certain to result from his conduct, the debtor will be found to have possessed the requisite intent to injure required under *Geiger*." *In re Ferrandina*, 533 B.R. 11, 26 (Bankr. E.D.N.Y. 2015) (collecting cases); *see also, e.g.*, *Salim v. VW Credit, Inc.*, 577 B.R. 615, 625 (E.D.N.Y. 2017); *In re Margulies*, 517 B.R. at 452-53.  Whether the "substantial certainty" test is objective or subjective is an open question in this Circuit.  *See In re Margulies*, 721 F. App'x at 101; *see also In re Margulies*, 566 B.R. 318, 330 (S.D.N.Y. 2017), *aff'd*, 721 F. App'x 98.  Courts in the Second Circuit "generally apply a subjective standard of intent."  *See In re Margulies*, 566 B.R. at 330 (collecting cases).

"As used in § 523(a)(6), the term malice means 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *Heilbron*, 2021 WL 1062034, at *2 (quoting *Ball*, 451 F.3d at 69).  "Malice may be implied 'by the acts and conduct of the debtor in the context of the surrounding circumstances.'"  *Ball*, 451 F.3d at 69 (alteration accepted) (quoting *Stelluti*, 94 F.3d at 88).  "Malice is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another."  *Salim*, 577 B.R. at 625 (quoting *In re Townsend*, 550 B.R. 220, 227 (Bankr. E.D.N.Y. 2016), *aff'd sub nom. Townsend v. Ganci*, 566 B.R. 129 (E.D.N.Y. 2017), *aff'd sub nom. In re Townsend*, 726 F. App'x 91 (2d Cir. 2018)).

"Unless preclusion principles bar assertion of self-defense, a debtor may raise self-defense as an affirmative defense to a non-dischargeability claim under section 523(a)(6)."  *In re Soliman*, 539 B.R. 692, 700 (Bankr. S.D.N.Y. 2015).  However, because "New York recognizes self-defense as a possible defense to a criminal assault charge, a guilty plea precludes a criminal defendant from later asserting self-defense in a civil assault case, or . . . as a defense to a denial of discharge."  *Id.* (citing, *inter alia*, N.Y. Penal Law § 35.15).

15

## II.     The September 28, 2023 Order and Judgment is Affirmed

In arguing that the Bankruptcy Court erred in concluding that Appellee had established that Appellant acted willfully and maliciously, Appellant points to certain trial testimony and argues that the Bankruptcy Court applied an incorrect standard – namely, a "foreseeability" standard. *See generally* Appellant Br.; Reply.  Appellant argues that "[t]he impression from the trial was that the punch by [Appellant] may have been reckless" and that "even if the act was intentional, the injury was not intentional and the injury was certainly not malicious." *See* Appellant Br. at 16; *see also* Reply at 6 (arguing that "[t]he action of Appellant by throwing a punch at Appellee could have been a reckless act instead of an intentional act"), 9 (arguing that "[t]he fact that Appellant admitted on cross examination by Appellee's attorney that he knew that if you punch someone in their jaw it is substantially likely you are going to break their jaw, does not establish that this was a willful and malicious injury").

In opposition, Appellee argues that "the record shows that [the Bankruptcy Court] never used a foreseeability standard and, instead, properly used the 'substantially certain' standard" and that based on Appellant's admissions at trial and other evidence, Appellee "established [A]ppellant's conduct was willful by showing that he knew that the injury was substantially certain to result from his punch, and also demonstrated that [A]ppellant acted maliciously because he knew punching [A]ppellee was wrong and he lacked a just cause or excuse to do so." *See* Appellee Br. at 1-2 (footnote omitted).

Upon consideration of the record and the applicable law, the Court concludes that the Bankruptcy Court properly concluded – applying the correct legal standards – that Appellee had established by a preponderance of the evidence that Appellant acted willfully and maliciously and that, pursuant to Section 523(a)(6), the Default Judgment therefore is nondischargeable.

Accordingly, the September 28, 2023 Order and Judgment must be affirmed. Appellant's argument that the Bankruptcy Court erred in concluding that Appellee had established that Appellant acted willfully and maliciously relies on mischaracterization of the Bankruptcy Court's decision and on selective citation to the record that ignores and/or minimizes important testimony on the relevant issues.

### A. The Bankruptcy Court Properly Concluded that Appellant Acted Willfully

The Court reviews *de novo* the Bankruptcy Court's conclusion that Appellee established by a preponderance of the evidence that Appellant acted willfully. Here, the record supports the Bankruptcy Court's conclusion that Appellee established by a preponderance of the evidence that Appellant acted willfully.

As an initial matter, the September 28, 2023 Decision reflects that the Bankruptcy Court applied the "substantial certainty" test. *See* R. 814-15 (setting forth "substantial certainty" test), 818 (stating that Appellee can demonstrate intentional injury if he shows that Appellant "acted intending to inflict it, or if he 'knew that the injury was substantially certain to result'" (quoting *In re Margulies*, 517 B.R. at 453[12])), 822 (finding that Appellant "knew to a substantial degree of certainty that if he punched [Appellee] in the jaw, an injury to [Appellee's] jaw was substantially certain to result"). Appellant's argument to the contrary is puzzling in light of the clear record as to this issue.

Further, judged under either an objective or subjective standard, the record supports the conclusion that Appellant acted willfully – that he knew that an injury was substantially certain to result from his conduct.[13] First, as the Bankruptcy Court noted, "[a]s an objective matter,

---

[12] The September 28, 2023 Decision appears to contain a typographical error, referencing page 162 rather than 453.

[13] The Court need not determine whether an objective or a subjective standard applies here, but

17

punching a person in the face with sufficient force to break that person's jaw is substantially certain to cause harm."  *See* R. 821 (collecting cases).  Second, as the Bankruptcy Court further noted, here, the record reflects Appellant's subjective belief.  *See* R. 821 (citing, *inter alia*, testimony at R. 741).  Indeed, when Appellant was asked on cross-examination if he knew that night that "if you punched somebody in their jaw it's substantially likely you're going to break their jaw," Appellant responded: "If you -- yeah, if you punch someone in the jaw, yes."  *See* R. 741.  The record reflects that Appellant subjectively believed that if he punched Appellee in the jaw, an injury to Appellee's jaw was substantially certain to result.

Appellant's emphasis on other portions of his testimony, *see, e.g.*, Appellant Br. at 16 (referencing, *inter alia*, Appellant's testimony that he was sure that Appellee did not seem hurt and believed that Appellee went back to work), does not alter the Court's conclusion as to willfulness.  Further, any suggestion that "[t]he fact that Appellant admitted . . . that he knew that if you punch someone in their jaw it is substantially likely you are going to break their jaw" does not establish willfulness, *see* Reply at 9, ignores the relevant legal standard.

### B.    The Bankruptcy Court Properly Concluded that Appellant Acted Maliciously

The Court reviews *de novo* the Bankruptcy Court's conclusion that Appellee established by a preponderance of the evidence that Appellant acted maliciously.  Here, the record supports the Bankruptcy Court's conclusion that Appellee established by a preponderance of the evidence that Appellant acted maliciously.

The record reflects that Appellant knew that punching another person in the jaw was "contrary to commonly accepted duties in the ordinary relationships among people, and injurious

---

notes that the Court is persuaded by the weight of authority within this Circuit applying a subjective standard.

to another" and malice therefore is implied. *See Salim*, 577 B.R. at 625. As the Bankruptcy Court correctly noted, "[g]enerally speaking, anyone of reasonable intelligence knows that punching a person in the face is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *See* R. 823 (quotation omitted). Further, as the Bankruptcy Court also correctly noted, Appellant does not contest that the conduct at issue – punching someone in the jaw – is wrongful. *See* R. 823-24. Indeed, Appellant testified that, on the night of the incident, he knew that punching another person in the jaw was "illegal" and "wrong" and that "whether [Appellee] was trying to steal [Appellant's] girlfriend or not, [Appellant] had no right to punch [Appellee] that night." *See* R. 741. Moreover, the record does not reflect that Appellant acted with just cause or excuse. *See* R. 824-25; *see also Heilbron*, 2021 WL 1062034, at *2; *In re Soliman*, 539 B.R. at 700.

\* \* \*

In sum, the Bankruptcy Court properly concluded that Appellee had met his burden of establishing that Appellant acted willfully and maliciously and that, pursuant to Section 523(a)(6), the Default Judgment therefore was not dischargeable.

## CONCLUSION

For the reasons set forth above, the September 28, 2023 Order and Judgment is AFFIRMED.

The Clerk of Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

                                                         */s/ Diane Gujarati*
                                                         DIANE GUJARATI
                                                         United States District Judge

Dated: September 12, 2024
       Brooklyn, New York